**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PAUL SMITH,

                        Plaintiff,

          - v -                             Civ. No. 9:12-CV-1152
                                                        (MAD/RFT)

G. WILSON, *Nurse*, OFFICER DUMAS, *Correction Officer*, LIRA, *Deputy of Programs*,

                        Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

**PAUL SMITH**
Plaintiff, *Pro Se*
00-A-2268
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

**HON. ERIC T. SCHNEIDERMAN**              **DOUGLAS J. GOGLIA, ESQ.**
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

**I. BACKGROUND**

On July 9, 2012, *pro se* Plaintiff Paul Smith filed the instant Complaint, pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), alleging that Defendants refused to grant him a reasonable accommodation for his disability and violated his rights under the First, Eighth, and Fourteenth Amendments. *See generally* Dkt. No. 1, Compl. On December 20, 2012, Defendants moved for Summary Judgment

*in lieu* of Answering Plaintiff's Complaint,[1] arguing, *inter alia*, that Plaintiff failed to state any cause of action for which relief could be granted. *See generally* Dkt. No. 20.

In accordance with this District's Local Rules of Practice, Defendants attached to their Motion the Court's "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion." Dkt. No. 20-1. On December 21, 2012, the Clerk of the Court issued a separate Notice to Plaintiff alerting him that a response to Defendants' Motion was due by January 17, 2013, and notifying him of the nature of summary judgment and the potential consequences of failing to respond to the Defendants' Motion. Dkt. No. 21. On August 9, 2013, in a final attempt by this Court to alert Plaintiff of the potential consequences of his continued silence, this Court ordered that Plaintiff be given an additional thirty days to respond to Defendants' Motion, and advised him of the potential consequences of failing to reply. *See* Dkt. No. 22, Order, dated Aug. 9, 2013. However, that correspondence was returned to the Court marked "refused" on August 19, 2013.[2] *See* Dkt. No. 23.

## II. DISCUSSION

### A. Failure to Prosecute

In circumstances such as these where a significant amount of time has passed since a plaintiff last communicated with the Court, the Court would normally analyze whether that litigant had effectively abandoned his claim, or at least failed in his duty to prosecute, in accordance with the

---

[1] The Second Circuit allows such motions. *See e.g.*, *Anderson v. Rochester-Genesee Regional Transp. Auth.*, 337 F.3d 201, 202 (2d Cir. 2003).

[2] The Court mailed the Order to Plaintiff at his last known address at Upstate Correctional Facility ("UCF"). According to the New York Department of Corrections and Community Supervision ("DOCCS") website, *available at* http://nysdocslookup.doccs ny.gov (last viewed on Sep. 5, 2013, for DIN# 00-A-2268), at the time this Order was issued, Plaintiff was still a resident at UCF.

authority granted to this Court pursuant to Federal Rule of Civil Procedure 41(b) and the Court's inherent power to control its docket. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–32 (1962); *see also Lindsey v. Loughlin*, 616 F. Supp. 449, 453 (E.D.N.Y. 1985) (citing *Link v. Wabash R. Co.* for the proposition that "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Plaintiff's last communication with this Court occurred on October 22, 2012, when Plaintiff informed the Court that "foul & corrupt judges . . . [were] sabotaging " his case and invited the Honorable Mae A. D'Agostino, United States District Judge, to "go fly a kite in the rain then drown in a [] pool[.]" Dkt. No. 11. Moreover, Plaintiff failed to heed the warnings he received from the Clerk of the Court and the Defendants on December 20 and 21, 2012, and refused to accept correspondence from this Court containing our most recent Order notifying him of the consequences of his continued inaction and offering him an additional thirty days within which to respond to Defendants' Motion. In summary, Plaintiff has not made contact with this Court in more than eleven months, nor made any effort whatsoever to prosecute his claims since receiving notice of Defendants' Motion more than nine months ago.

According to this District's Local Rules of Practice, a plaintiff's "failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y.L.R. 41.2(a). Plaintiff's inaction in this case clearly evinces a failure to duly prosecute. *See id.*; *see also Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (finding that the district court did not abuse its discretion in dismissing case due to party's failure to prosecute the action). Thus, the Court would

be well within its discretion to recommend dismissal of this action based upon Plaintiff's failure to prosecute this matter and his apparent abandonment of his claims. Before making such a recommendation, it is this Court's practice to provide, once again, a plaintiff with notice of our intent to recommend dismissal due to his failure to prosecute and give him an opportunity to explain his inactivity. However, based upon our review of Defendants' Motion, it is clear that Plaintiff's Complaint should be dismissed with prejudice on the merits and providing Plaintiff with a further opportunity would only result in unnecessary delay of this matter.

## B. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir. 1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (quoting FED. R. CIV. P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (alteration and emphasis in original) (citation omitted). However, it is well settled that on a

motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

Local Rule 7.1(a)(3) requires the non-movant to file a Statement of Material Facts that mirrors the movant's statement in matching numbered paragraphs and that sets forth a specific reference to the record where the material fact is alleged to arise. N.D.N.Y.L.R. 7.1(a)(3). More specifically, this Local Rule provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id*. (emphasis in original). Courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot*, 2002 WL 368534, at *2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia*, *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 2001

WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the Court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). As long as the Local Rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id*. at 470-71.

### C. Plaintiff's Claims

Construed liberally, Plaintiff's Complaint alleges that (1) Deputy Superintendent of Programming Defendant Lira failed to grant him a reasonable accommodation to which he believed he was entitled under the ADA; (2) his Eighth Amendment right to adequate medical treatment was violated when: (a) Defendant Nurse Wilson and Defendant Corrections Officer ("CO") Dumas purposely ignored an order from one of his doctors requiring that he be housed in a single-occupancy cell and instead placed him in a double-occupancy cell, (b) Defendant Wilson refused to give Plaintiff a Tuberculosis ("TB") shot, and (c) Defendant Wilson tampered with his prescription eye drops and poisoned his Tylenol; and (3) Defendant Wilson violated his religious rights. Compl. at pp. 4 & 5.[3]

### D. ADA Claim

Plaintiff claims that, pursuant to the ADA, he requested a reasonable accommodation from UCF's Deputy of Programs Defendant Lira, and that prior to filing his Complaint a month had passed during which time he did not hear from Defendant Lira. Compl. at p. 4

To bring a claim under Title II of the ADA, a plaintiff must establish that he (1) is a qualified

---

[3] The pages of Plaintiff's Complaint are unnumbered, and while the paragraphs are numbered, they are out of order. *See generally* Compl. Therefore, when referring to the Complaint we will use the page numbers automatically assigned by the Court's Electronic Case Filing System.

individual with a disability; (2) is being excluded from participation in, or being denied the benefits of some service, program or activity by reason of his disability; and (3) the entity providing the service is a public entity. *Farid v. Demars,* 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009) (citation omitted). There is no question that UCF is a public entity subject to the requirements of the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). However, evidence submitted by Defendants clearly shows that Plaintiff cannot establish the remaining elements of an ADA claim.

For example, to show that a particular plaintiff qualifies as disabled under the ADA the Second Circuit requires that

> [A] plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.' Third, the plaintiff must show that her impairment 'substantially limits' the major life activity previously identified.

*Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (internal quotation marks omitted).

Here, Plaintiff has not made such a showing. Indeed, Plaintiff neglected to allege what disability he suffers from, or explain how an alleged disability substantially limits a major life activity recognized by the ADA. *See generally* Compl.; *see also* 42 U.S.C. § 12102 (defining major life activity for purposes of the ADA). Moreover, Plaintiff was not "excluded from participation in, or [] denied benefits of some service, program or activity by reason of his disability." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d at 147; *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir. 2003) (stating that the term "by reason of his disability" in 42 U.S.C. § 12102 really means that "plaintiff must prove that the denial is because of the disability") (internal quotation marks and citations omitted).

Indeed, Plaintiff's only allegation regarding his request for an accommodation is extremely

vague: "I put in an (A.D.A.) American[s with] Disability Act Dir 2612 sent [sic] Request of Accommodation to Deputy of Programs Lira, its been going on a month now sir [sic], nor have I seen him [sic]." Compl. at p. 4. On its face, this statement fails to allege that his request was denied; let alone that his request was denied because of his disability.

However, according to the evidence provided by Defendants, "Plaintiff submitted a request on June 24, 2012 for Large Print, Orientation & Mobility Instruction, Magnifiers, a Tape Player and Cassettes, a Lamp, and a Visor/Sunglasses for indoor use on account of his supposed visual impairment[,]" and that this request was ultimately denied by Defendant Lira. Dkt. No. 20-5, Geraldine Wilson Decl., dated Dec 20, 2012, at ¶ 16 & Dkt. No. 20-13, Wilson Decl., Ex. G, Accommodation Req., dated June 24, 2012. Notably, although Plaintiff clearly marked the types of accommodations he wanted, he left blank the portion of the request form under which he was supposed to indicate for which program or service he required the accommodations. *See* Wilson Decl., Ex. G. Thus, there is no indication that without the accommodations requested, Plaintiff would be unable to benefit from or participate in any particular program(s) or service(s).

Moreover, it is also clear from the Exhibits and Declarations submitted by Defendants that Plaintiff's request was not denied because he was disabled, but rather because Defendant Lira could find "nothing in Plaintiff's medical records to indicate that Plaintiff had a legitimate need for the accommodations he requested." *See* Wilson Decl. at ¶ 16 & Ex. G. Given Plaintiff's failure to respond to Defendants' Motion, or to defend this claim in any way despite receiving multiple notices and warnings of the consequences of such a failure, we accept Defendants' uncontroverted assertion as true. *See Pettus v. McGinnis*, 533 F. Supp. 2d 337, 338-39 (W.D.N.Y. 2008) (accepting the factual allegations made by defendants in their 7.1 statements as true where the plaintiff failed to respond

to defendant's motion despite having been adequately advised of the pendency of the motion, of the need for a response and the form in which he should do so, as well as of the consequences of not responding to defendant's arguments and factual allegations); *see also* N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original). In other words, Plaintiff's request was not denied because of his disability, *see Henrietta D. v. Bloomberg*, 331 F.3d at 278, but rather because according to his medical records Plaintiff did not have a disability which qualified him for such accommodations in the first place. *See* Wilson Decl. at ¶ 16 & Ex. G.

Thus, Defendants have produced sufficient documentary and testimonial evidence to meet their burden of establishing the absence of any genuine issue of material fact as to two of the three elements of Plaintiff's ADA claim. *See Celotex Corp. v. Catrett*, 477 U.S. at 323. Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's ADA claim against Defendant Lira.

### E. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). "Punishment" encompasses deprivations imposed incident to imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if incompatible with" evolving standards of decency that mark the progress of a maturing society." *Id*. at 102.

Additionally, the Eighth Amendment dictates that prisoners are entitled to adequate medical

care. To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 104. "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### *1. Medical Deliberate Indifference Claim*

Plaintiff claims that a medical specialist, Mr. Attia,[4] noted that "Mr. Smith is not to ever be double bunked," and Nurse G. Wilson with the help of Officer Dumas "purposely ignored [Mr. Attia's orders] to have [Plaintiff] harmed, hurt & loose[sic] [his] vision" by placing him in a double-occupancy cell on June 21, 2012.[5] Compl. at pp. 4–5. However, nothing in the record before us demonstrates that Defendants acted with deliberate indifference toward Plaintiff's medical needs. Indeed, Plaintiff fails to identify the nature of the purportedly objectively serious medical condition from which he was suffering, or how being double bunked affected this condition..

Once again, evidence produced by Defendants clearly establishes that Plaintiff cannot succeed

---

[4] It is unclear what Mr. Attia's title or specialty is; however, construed liberally, it appears that Plaintiff is presenting Mr. Attia as some sort of medical specialist. *See* Compl. at pp. 4–5.

[5] Plaintiff intimates in his Complaint that Defendants Dumas and Wilson have been violating Mr. Attia's orders to keep him in a single-occupancy cell since June 10, 2011. *See* Compl. at p. 4. However, the evidence produced by Defendants clearly shows that this date cannot be accurate. To begin with, Plaintiff was not issued a single-cell restriction until September 29, 2011. Wilson Decl. at ¶ 6 & Ex. B at p. 395. Moreover, record evidence produced by Defendants further establishes that Plaintiff's single-cell restriction was lifted on January 24, 2012, and that Plaintiff was not placed in a double-occupancy cell until June 21, 2012. *See* Wilson Decl. at ¶¶ 4 & 8. Prior to June 21, 2012, Plaintiff had been kept in a single-occupancy cell for a myriad of reasons, including, in large part, because Plaintiff refused to comply with UCF's Tuberculosis Testing Policy and had to be quarantined in a single-occupancy cell while on Tuberculin Hold between October 4, 2011, when he initially refused a TB test, and February 28, 2012, when he finally relented and submitted to a TB test. *See id*. at ¶¶ 6–14 & Ex. B. at pp. 385 & 394 (noting Plaintiff refused a "PPD" test). Therefore, it is established that Plaintiff was not double-celled until June 21, 2012.

on a deliberate medical indifference claim. According to uncontroverted Declarations and Exhibits submitted by Defendants, Plaintiff requested that he be housed in a single-occupancy cell due to various visual impairments. Plaintiff has "only one eye,"[6] and has requested and received various forms of treatment for his remaining eye.[7] Wilson Decl. at ¶ 5 & Dkt. No. 20-7, Wilson Decl., Ex. B, Portions of Plaintiff's Ambulatory Health Record, at pp. DOCCS 327, 340–42, 344, 353, 372, 381, 384–87, 390, 395–96, & 399–403. However, standing alone, neither the fact that Plaintiff is monocular, nor the fact that he has received various treatments for his remaining eye, are sufficient to establish that Plaintiff suffered from an objectively sufficiently serious condition for purposes of the Eighth Amendment. Plaintiff's Complaint is devoid of any facts from which such a conclusion could be reached, such as the type or severity of the condition, the urgency of his need for treatment, or the ways in which his condition affected his ability to go about his daily activities. *See Chance v. Armstrong*, 143 F.3d at 702.

Moreover, even if we were to assume that Plaintiff's visual impairment was sufficiently serious for purposes of the Eighth Amendment, there is simply no evidence on the record before us from which a reasonable juror could conclude that either Defendant Wilson or Defendant Dumas acted with deliberate indifference towards Plaintiff's medical condition. To the contrary, medical records provided by Defendants clearly reveal that Plaintiff received continual treatment for his condition, including appointments with optometry, specialty consultations with outside ophthalmologists, and was prescribed safety glasses and eye drops. *See* Wilson Decl., Ex. B at pp. DOCCS 327, 344, 353, 384–85, & 399–400. Thus, whatever Plaintiff's condition may have been,

---

[6] While it is unclear how Plaintiff lost one of his eyes, Plaintiff's does not claim that he lost his eye due to Defendants' failure to provide adequate treatment.

[7] Neither Plaintiff nor Defendants explain why Plaintiff requested treatment(s) for his other eye.

it appears that he was provided with adequate treatment. *See Harrington v. Mid-State Corr. Facility*, 2010 WL 3522520, at *11 (N.D.N.Y. May 21, 2010) (finding that defendant doctors' "actions of referring [plaintiff's] care to a specialist, more familiar with the intricacies of [plaintiff's] subjective symptoms, belies any claims of deliberate indifference") (citing *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir. 1986)).

Moreover, Plaintiff's claim that Defendants Dumas and Wilson ignored the orders of an outside specialist by placing him in a double cell has no basis in fact. Rather, it is uncontroverted that Defendant Wilson's conclusion that Plaintiff no longer required a single-cell restriction was a medical judgment based on the recommendations of and consultations with other medical professionals as well as her own experience. "On January 24, 2012, the facility medical staff made the determination that Plaintiff could be double bunked." Wilson Decl. at ¶ 8 & Ex. B at p. DOCCS 381. Furthermore, it is clear from the uncontroverted Declarations and Exhibits submitted by Defendants that prior to placing Plaintiff in a double cell on June 21, 2012,[8] Defendant Wilson consulted with Dr. Amatucci, a non-defendant physician at UCF, who told Defendant Wilson that he could think of no reason why Plaintiff should not be placed in a double-occupancy cell. *See* Wilson Decl., at ¶¶ 7, 14, Ex. B at pp. DOCCS 353 & 381, & Wilson Decl., Ex. C, E-Mail, dated Oct 25, 2011; Defs.'; *Pettus v. McGinnis*, 533 F. Supp. 2d 337, 338–39 (W.D.N.Y. 2008); *see also* N.D.N.Y.L.R. 7.1(a)(3). Also, based on her own experience, Defendant Wilson was aware that in the past monocular inmates had been double bunked. *Id*. at ¶ 15. The fact that Defendant Wilson reached a different conclusion than "Mr. Attia" or any of Plaintiff's other doctor, is not actionable where, as was the case here, Defendant Wilson's determination was based on reasonable medical judgment. *See Ravenell v. Van der Steeg*, 2007 WL

---

[8] *See supra* n.5.

765716, at *6–7 (S.D.N.Y. Mar. 14, 2007) (citing cases).

Likewise, to the extent that Defendant Correction Officer Dumas, a non-medical professional, relied on the medical judgment of Defendant Wilson and/or other medical personnel at UCF, he cannot be found to have acted with deliberate indifference towards Plaintiff, unless Plaintiff can show that such a non-medical defendant should have challenged the medical professionals' decisions. *See Gonzalez v. Sarreck,* 2011 WL 5051341, at *14 (S.D.N.Y. Oct. 24, 2011) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000)); *see also Phelan v. Chin*, 2012 WL 3597409, at *2 (W.D.N.Y. Aug. 20, 2012) (stating that laypersons are "entitled to rely on the opinions of the medical staff") (citing, *inter alia*, *Gonzales v. Sarreck*). Nothing in Plaintiff's Complaint nor the evidence provided by Defendants suggests that Defendant Dumas should have challenged the removal of Plaintiff's single-cell restriction.

Lastly, Plaintiff's own recalcitrance toward efforts to treat his visual impairment further belies any claim that Defendants acted with deliberate indifference. Evidence produced by Defendants clearly establishes that Plaintiff repeatedly refused to attend scheduled appointments with ophthalmologists both before and after he was placed in a double-occupancy cell. See, e.g., Wilson Decl., Ex. B, at pp. DOCCS 327, 340–42, 344, 372, 399, 401, & 403. Plaintiff cannot on the one hand refuse to accept the care that is recommended, and then on the other sue because he feels his treatment was insufficient. *See Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (affirming lower court ruling that a prisoner who declines medical treatment cannot establish an Eighth Amendment claim for medical deliberate indifference); *see also Mendoza v. Schult*, 2011 WL 4592381, at *5 (N.D.N.Y. Sept. 14, 2011) ("Plaintiff, who apparently disagreed with the clinical judgment of the medical staff, effectively took his treatment regimen into his own hands by unilaterally opting to

discontinue the prescribed recommendations of health services. . . . [and could not] turn around and sue the medical professional for deliberate indifference whose judgment the prisoner has questioned and even defied.") (citing *Jones v. Smith*); *Ramos v. Genovese*, 2013 WL 773731, at *13 (N.D.N.Y. Jan. 22, 2013).

Likewise, Plaintiff's claim that Defendant Wilson refused to give him a TB shot lacks any basis in fact. Defendants have submitted Declarations and Exhibits which clearly establish that Defendant Wilson did not deny Plaintiff a TB shot, but rather that Plaintiff repeatedly refused to allow Defendant Wilson or any other medical personnel at UCF to provide him with a TB Shot. *See* Wilson Decl., Ex. E, Treatment and Med. Record; *see also* Wilson Decl. at ¶ 12; *Pettus v. McGinnis*, 533 F. Supp. 2d at 338-39; *see also* N.D.N.Y.L.R. 7.1(a)(3). Thus, Plaintiff is prohibited from refusing treatment on the one hand and then bringing an action for inadequate treatment on the other. *See Jones v. Smith*, 784 F.2d at 151-52.

### 2. *Remaining Eighth Amendment Allegations*

Next, Plaintiff alleges that Defendant Wilson "brought [him] loose poison Tylenol" and tampered with his "eye drop refills[.]" Compl. at p. 5. Construed liberally, these allegations may represent an attempt by Plaintiff to claim either deliberate indifference towards his medical condition or a cruel and unusual punishment claim under the Eighth Amendment. However, on their face these allegations are far too conclusory to state a claim under any theory.

As Defendants have argued, aside from the bald allegations noted above, Plaintiff fails to provide any additional facts regarding these claims. Defs.' Mem. of Law at p.11 n.5. For example, Plaintiff's Complaint does not allege any information about how he knew the pills were poisoned or how his eye drops had been tampered with. Plaintiff fails to allege that he suffered any negative

consequences from either the poisoned Tylenol or the adulterated eye drops. Indeed, Plaintiff fails to allege that he used either the eye drops or the Tylenol. Such vague and incomplete allegations are insufficient as a matter of law to state a claim under § 1983. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ( finding that mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment).

Moreover, Defendant Wilson has submitted a sworn affidavit in which she denies tampering with Plaintiff's eye drops or poisoning his Tylenol. Wilson Decl. at ¶ 17. In light of the factual paucity of Plaintiff's allegations, and his failure to controvert to Defendants' well supported Motion, we accept Defendant Wilson's claim as true. *See Pettus v. McGinnis*, 533 F. Supp. 2d at 338-39; *see also* N.D.N.Y.L.R. 7.1(a)(3).

For all of these reasons we recommend that Defendants' Motion be **GRANTED** as to all of Plaintiff's Eighth Amendment Claims against Defendants Wilson and Dumas.

### F.  First Amendment

Plaintiff alleges that "Nurse Wilson has also violated my religious rights First Amendment [sic]." *See* Compl. at p 5.

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I. These provisions are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (cited in *Wares v. Vanbebber*, 319 F. Supp. 2d 1237, 1243 (D. Kan. 2004)). Prisoners retain their right to religious freedom even when incarcerated. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

The Second Circuit has directed courts faced with constitutional free exercise claims to first assess,

> (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective.

*Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988); *see also Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 547 (2d Cir. 2002) ("An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious.") (internal quotation marks and citations omitted) (quoted in *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)).

Aside from the sole conclusory allegation noted above, Plaintiff fails to allege any additional facts regarding Nurse Wilson's alleged violation of his First Amendment rights. Plaintiff neither identifies what religious practice was allegedly impeded nor how Nurse Wilson interfered with his right to freely exercise his religion. Thus, as Defendants have argued, standing alone, such a bald-faced allegation is insufficient as a matter of law to establish a free exercise violation under § 1983. *See* Defs.' Mem. of Law at p. 11 n.5; *see also Carey v. Crescenzi*, 923 F.2d at 21.

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's religious rights claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion (Dkt. No. 20) be **GRANTED** in its entirety and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: September 11, 2013
       Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge